# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| **KIMBERLY A. HOYLE AND A.** | ) | |
| **BURTON SHUFORD, CHAPTER 7** | ) | |
| **TRUSTEE OF THE BANKRUPTCY** | ) | |
| **ESTATE OF MARK ALAN HOYLE** | ) | |
| **AND KIMBERLY ANN HOYLE,** | ) | **Case No 3:08-CV-00169** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FREIGHTLINER, LLC,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

THIS MATTER is before the court upon Defendant's Motion for Summary Judgment on Plaintiff's claims of sex discrimination and retaliation under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and Plaintiff's common law claims of negligent infliction of emotional distress and negligent retention and supervision. Defendant also moves the court to strike the Declaration of Christopher Dewayne Williams pursuant to Rule 3(c)(1) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Plaintiff worked as a truck assembler at Defendant's Mount Holly plant. She was represented by the United Auto Workers Union under a collective bargaining agreement. Plaintiff began working on the chassis line in January 2004. During that time, Plaintiff alleges that her supervisor told her to "get [him] a drink out of the machine." After Plaintiff spoke to her

1

union representative about the comment, she did not have additional problems with her supervisor.

Defendant maintains an anti-harassment policy, which prohibits harassment and retaliation and provides ways for an employee to voice a complaint. Defendant also provides employees with copies of the policy, provides training sessions, and maintains an internet use policy to prohibit the use of company computers for inappropriate purposes.

In May or June 2005, Plaintiff and a fellow co-worker found a tampon tied to the key ring on a truck in the work area. Plaintiff reported the incident to the union representative and the shift supervisor, who subsequently removed it. Plaintiff stated that they could not identify who put the tampon there and did not report it to Human Resources ("H.R.") until a few months later. When Plaintiff filed a complaint with H.R., Chris Rice ("Rice") the H.R. Manager, conducted an investigation but could not determine who put the tampon in the truck. Later in June 2005, Plaintiff and co-worker David Stowe were walking through an area of the plant and saw a picture of a "lady in a G-string" taped to the underside of the lid of a toolbox. Two days after the incident, Plaintiff told her supervisor, Colonel Hopper ("Hopper"), and he stated that he would take care of it. Plaintiff confirmed that she did not see the picture again.

A few days later, Plaintiff was walking though the plant with her pants taped at the bottom so she would not spill fluid on her clothes. Plaintiff alleged that a co-worker said, "You[']re taping up your pants legs now so we can't see up under your pants?" However, Plaintiff did not file a complaint about the alleged remark and believed that it was due to her complaint about the toolbox.

In September 2005, Plaintiff notified her team leader about a swimsuit calendar on the bulletin board in her work area. The team leader immediately removed the calendar. Plaintiff later saw the same calendar in a co-worker's toolbox. While Plaintiff was informing Hopper about what she saw, she noticed the same calendar in his office. Plaintiff told Hopper that she found the calendar offensive and Hopper immediately removed it. Plaintiff also complained that another co-worker had a picture of his wife in a swimsuit on the inner lid of his toolbox. Hopper spoke to both co-workers and had them remove the pictures from their toolboxes.

The next day, Plaintiff called Rice to complain about the pictures and calendars. Plaintiff also brought to Rice's attention that she heard an unidentified voice say, "[w]ell, there's Dolly" when she walked through the plant but admitted that she did not know what the comment meant. Rice performed a check on all of the toolboxes and made employees remove photographs that were not work related.

In November 2005, Plaintiff was working on a company computer and saw an unclothed female screensaver. Plaintiff subsequently used a different computer for the rest of her shift. Plaintiff told Rice about the incident the next day and Rice checked the computer, but could not find the picture. However, Rice did a sweep of all the computers and removed any images that were not work related. Furthermore, Rice and an IT employee continued to conduct sweeps of the computers on a regular basis.

Plaintiff was reassigned to working as a "5-S" person in the off-line area in November. She admits the plant was overstaffed and her supervisor informed her that this was the only work he had available. Her responsibilities included marking, sorting, and cleaning work areas. Plaintiff did not contact a United Auto Workers Union representative about the change in

responsibilities.  On December 4 or 6, 2005, Plaintiff called in sick to work at the start of her

shift between the times of 2:30 and 2:31 P.M. Employees are required to report an absence by no

later than the start of the shift, or it becomes chargeable time no matter what the reason is for the

absence[1].  She also contacted Rice to explain the reason for her absence.  Plaintiff told Rice that

she was sick but would be in for the second half of her shift.  Plaintiff did not report for work at

all that day.  Prior to the day Plaintiff called in sick, Rice had provided her with a last chance

agreement[2] due to the 65.36 hours of chargeable absences she accrued during her employment.

According to Defendant, Plaintiff had a "lengthy attendance problem" and her cumulative

attendance record frequently fluctuated around the level warranting a final warning.  The last

chance agreement stated that Plaintiff would be terminated if she accrued any chargeable time

between November 11, 2005 and March 23, 2006.  Because Plaintiff called in sick after the start

of her shift, Rice recommended the termination of Plaintiff to the plant manager.  The manager

agreed and on December 7, 2005, Rice sent a letter notifying Plaintiff of her termination.

Plaintiff later provided a medical excuse for the absence but Rice refused to accept the

documentation.  In May 2007, Plaintiff was reinstated to work after an arbitrator ruled that the

call was made to Rice before the start of Plaintiff's shift.

---

[1] Defendant's attendance policy classifies absences as chargeable or non-chargeable. Chargeable absences include tardiness, absenteeism and time, which are not made up within the same week.  If an employee accrues 50 hours of chargeable time, his or her employment is subject to termination.

[2] Last chance agreements are only given in extenuating circumstances and explicitly provide that an employee will be terminated if he or she accrues any additional chargeable time.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. *Id.* at 248. The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 322-23.

### II. Plaintiff's Claim for Hostile Work Environment Under Title VII

To prevail on a hostile work environment sexual harassment claim, Plaintiff must prove that: (1) she was harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis for imputing liability to the employer.[3] *Hartsell v. Duplex Products, Inc.*, 123 F.3d

---

[3] Citing *Evans v. Harnett County Bd. of Educ.*, 684 F.2d 304 (4th Cir. 1982) and *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130 (4th Cir. 1988), the Plaintiff contends that once she has established her prima facie case, the burden of persuasion should shift to the Defendant because of a "prior judicial finding" of sexual harrassment against Freightliner in *Homesly v. Freightliner Corp.*, 61 Fed.Appx. 105 (4th Cir. 2003). However, *Homesly* has no bearing on this case as it arose out of a different facility, involved different actors, and was alleged to have occurred approximately eight years earlier than the facts alleged herein.

766, 772 (4th Cir. 1997). Here, the conduct Plaintiff experienced falls far short of creating a hostile work environment under Fourth Circuit precedent.

A. **Plaintiff Cannot Show She Was Harassed "Because Of" Her Sex.**

An employee suffers harassment "because of" sex if but for the employee's sex, she would not have been the victim of the discrimination. *Id.* Plaintiff "can succeed only by showing that she 'is the individual target of open hostility because of her sex.'" *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008) (citing *Ocheltree v. Scollon Prod., Inc.,* 335 F.3d 325, 331 (4th Cir. 2003) (en banc)). Furthermore, "[w]orkplace harassment … is [not] automatically discrimination 'because of sex' merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs.*, *Inc.*, 523 U.S. 75, 80 (1998). "The critical issue … is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*.

Plaintiff cannot establish that any of the alleged conduct occurred because of her sex as the conduct took place in group settings and was often merely overheard by Plaintiff. The photographs, screensavers, and calendars were visible to both female and male employees. The tampon had gender specific connotations, however, Plaintiff admits that she does not know who put it in the truck and thus, there is no evidence that the act was directed at her. Additionally, the comments regarding "Dolly" and the tape on Plaintiff's pants legs are not harassment because of sex. Plaintiff only speculates that "Dolly" was directed at her and she states that the comment regarding her pants legs referred to her complaints about the picture on the toolbox. Based upon the evidence, Plaintiff cannot raise a genuine issue of material fact that she was harassed "because of" her sex.

## B. Plaintiff Cannot Show That the Alleged Harassment Was Severe or Pervasive

In order for conduct to be harassment, the behavior must (1) be perceived by the victim to be abusive and (2) be severe or pervasive enough to create an objectively hostile or abusive work environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). The subjective element of a hostile environment claim requires that Plaintiff perceive her environment to be hostile. *Id.* In this case, Plaintiff merely relies on comments that she either did not know the meaning of or did not report to a supervisor when they were allegedly made.

The objective element of a hostile environment is based on the totality of the circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 17. Plaintiff's evidence only reveals simple teasing, mildly inappropriate visual materials, off-hand comments, and isolated incidents, which were not physically threatening, and did not interfere with Plaintiff's work performance. The calendars and pictures were not directed at Plaintiff. Moreover, materials and conduct far more graphic and offensive have been found not actionable. *See Dwyer v. Smith*, 867 F.2d 184, 187-88 (4th Cir. 1989) (holding that conduct was not actionable where plaintiff was subjected to pornographic material in mailbox, was accused of having sex with coworkers, and subjected to sexually explicit and graphic description of sexual behavior).

The conduct that Plaintiff alleges falls far short of conduct that the Fourth Circuit deems "severe or pervasive." *See Ocheltree,* 335 F.3d at 331 (finding the element is satisfied when male

employees simulated sex with mannequins, sang vulgar songs, described oral sex, and showed the female plaintiff graphic pictures). Plaintiff also fails to identify any supervisory employee who allegedly subjected her to harassment.

### C. Defendant Took Prompt and Adequate Remedial Action

In order to be liable, the employer must have actual or constructive notice of the alleged harassment and then fail to take prompt and adequate action. *Mikels v. City of Durham*, 183 F.3d 323, 329 (4th Cir. 1999). The evidence shows that Plaintiff either did not report some of the alleged incidents of harassment or delayed in reporting some conduct. Moreover, the alleged conduct was not so widespread that Defendant could have reasonably been on notice. As noted earlier, Defendant maintains an anti-harassment policy, which is provided to employees. The Fourth Circuit holds that the distribution of an anti-harassment policy provides "compelling proof" that the company exercised reasonable care in preventing and correcting harassment. *Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 266 (4th Cir. 2001). The only way to rebut this proof is to show that the employer adopted the policy in bad faith. *Id.* There is no evidence of bad faith herein.

Defendant must act reasonably in correcting and preventing harassment of Plaintiff, but does not have to follow verbatim every provision in its policy when responding to a complaint. *See Brown v. Perry*, 184 F.3d 388, 397 (4th Cir. 1999) (noting the "law requires reasonableness, not perfection" in developing, implementing, and enforcing sexual harassment policies and procedures). The evidence shows that after Plaintiff complained, Defendant acted promptly to eliminate the problems and none of the counseled employees repeated the alleged conduct. The anti-harassment policy, computer use policy, and prompt response to the allegations shows that

8

Defendant did take reasonable care to act appropriately to end any unacceptable behavior. Any imperfections that Plaintiff alleges in Defendant's investigation do not render Defendant's response to the complaints inadequate as a matter of law.

## III. Plaintiff's Claim for Intentional Discrimination on the Basis of Her Sex

To prevail on her gender discrimination claim, Plaintiff must prove by a preponderance of the evidence that "but for" Defendant's motive to discriminate against her because of her sex, she would not have been terminated. *See Hartsell*, 123 F.3d at 772.

### A. Plaintiff Cannot Prove Her Prima Facie Case

To prove a prima facie case of disparate treatment under Title VII, Plaintiff must prove (1) she is a member of a protected class (female); (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to employees outside the protected class. *Taylor v. Virginia Union University*, 193 F.3d 219, 234 (4th Cir. 1999).

Plaintiff cannot prove her prima facie case because she has not identified any similarly situated employees who were treated more favorably while on a last chance agreement. Plaintiff has failed to provide specific examples of males who were treated more favorably after they called in directly at the start of their shift. Plaintiff only relies on her subjective belief and conclusory statements that there were some males who were treated more favorably. A subjective belief is insufficient to avoid summary judgment. *Goldberg v. B. Green and Co.,* 836 F.2d 845, 848 (4th Cir. 1988) (noting conclusory statements will not satisfy plaintiff's burden in responding to summary judgment motion).

**B.  Defendant Has a Legitimate, Nondiscriminatory Reason For Its Termination of Plaintiff's Employment**

Even if Plaintiff could state a prima facie case, the Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  A Title VII plaintiff cannot prove discrimination unless she demonstrates that the employer's legitimate reasons for her discharge were untrue and that intentional discrimination was the real reason for the decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-17 (1993).  Here, the undisputed evidence shows that Rice only took action to terminate Plaintiff's employment because he believed that Plaintiff violated her last chance agreement.  Plaintiff's unsubstantiated allegations that Rice's action was discriminatory is insufficient as a matter of law to show that the reason is false.

**IV.  Plaintiff's Retaliation Claim**

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action contemporaneous with such opposition; and (3) a casual connection links the protected activity and the adverse employment action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991).

Plaintiff identifies two incidents of alleged retaliation: (1) her assignment to a 5-S position; and (2) her termination.  Plaintiff cannot establish a prima facie case of intentional retaliation regarding her assignment as a 5-S person on the turn and sale line because such assignment does not constitute an actionable adverse employment action.  The new assignment did not impact the terms or conditions of her employment, and any other employee could be

rotated in this area at any time.  Plaintiff only speculates as to Defendant's motive, which is

insufficient to rebut Defendant's legitimate and non-retaliatory reasons for this action.  There was

a genuine need for the position because Defendant implemented a quality process improvement

program that was part of the Daimler-Chrysler Production System.  The same position was also

implemented in other departments and other employees were reassigned to the same role.

With regard to her termination, Plaintiff is unable to demonstrate that the reasons given

by Defendant are a pretext for retaliation.  Defendant terminated Plaintiff because Rice believed

that she violated her last chance agreement.  Plaintiff points to the close proximity between her

complaints and her termination, but this evidence is insufficient to withstand summary judgment.

*See Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (noting that

temporal proximity alone "far from conclusively establishes the requisite casual connection" to

prevail on a retaliation claim) (quoting *Williams v. Cerberonics, Inc.* 871 F.2d 452, 457 (4th Cir.

1989).

Furthermore, Plaintiff alleges that she was offered a job at Lithium FMC, which was

rescinded, and that Rice was involved with the rescission.  Nevertheless, Plaintiff admits that she

does not have evidence to support her claim.  Plaintiff fails to satisfy her burden and her

intentional retaliation claim fails.

### V.  Negligent Infliction of Emotional Distress

To state a claim for negligent inflliction of emotional distress ("NEID"), Plaintiff must

prove Defendant (1) negligently engaged in conduct; (2) which was reasonably foreseeable

would cause severe emotional distress; and (3) the conduct did, in fact, cause severe emotional

disted. *Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990).

In order to survive summary judgment, Plaintiff has the burden to establish that it was "reasonably foreseeable that [Defendants] conduct would cause severe emotional distress" and did cause such distress. *Id.* (internal quotations omitted). Plaintiff cannot meet this burden because she has not offered evidence to support the claim that Defendant was aware of a foreseeable risk of harm. Plaintiff has not provided evidence, beyond her own speculation, that Defendant acted negligently. Thus, Plaintiff's NIED claim fails as a matter of law.

## VI. Negligent Retention and Supervision

To establish a claim for negligent retention and supervision, Plaintiff must demonstrate that (1) Defendant's employees committed tortious acts, and (2) that prior to the act, Defendant knew or had reason to know of the employee's incompetency. *See Smith v. First Union Nat. Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000).

North Carolina law does not permit a negligent supervision claim arising from an alleged Title VII violation on the grounds that such a violation does not constitute a common law tort. *See Webb v. Starbucks Corp.,* 2008 WL 4891106, at *12 (W.D.N.C. Nov. 12, 2008). Also, Defendant did not know or have reason to know of any alleged discriminatory conduct before Plaintiff complained. *See Smith*, 202 F.3d at 250 (finding plaintiff's negligent supervision claim failed where employer did not know or have reason to know of alleged harassment before plaintiff complaint). Defendant could not prevent harassing behavior without prior knowledge of employees' actions. Accordingly, summary judgment is appropriate as to this claim as well.

Moreover, as the court grants summary judgment as to all of the Plaintiff's claims, her

claim for punitive damages must fail as well.

## VII. Motion to Strike

Defendant moves to strike the Declaration of Christopher Dewayne Williams ("Williams") pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to timely identify Williams as a witness pursuant to Rule 26(a)(1)'s disclosure requirements. Rule 37(c)(1) provides that a party who fails to identify a witness as required by Rule 26(a) or (e) is not allowed to use that witness to supply evidence on a motion. *See Quality Built Homes, Inc. v. Village of Pinehurst*, 2008 WL 3503149, at *5 (M.D.N.C. Aug. 11, 2008) (prohibiting use of affidavit at summary judgment stage based on failure to disclose identity of affiant during discovery period). The only exceptions to exclusion are if the non-disclosing party can demonstrate that the failure to disclose is substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Williams was not identified as a witness until two months after discovery ended, thus precluding the Defendant from taking his deposition.

Plaintiff argues that the Defendant should have been on notice that Williams was a potential witness based upon references to Williams in deposition testimony and in Plaintiff's response to Interrogatory No. 14. However, the court finds that these references were insufficient to alert Defendant that Williams was a potential witness. Williams was not identified in response to discovery requests that expressly sought identification of potential witnesses and persons with relevant knowledge.

Plaintiff has not shown that her failure to timely disclose Williams as a witness

was either sbstantially justified or harmless.  Defendant has been clearly prejudiced in that it has lost its opportunity to depose Williams.  Accordingly, the Declaration of Williams will not be considered by the court.

## **CONCLUSION**

IT IS THERFORE ORDERED that Defendant's Motion for Summary Judgment and Motion to Strike are hereby GRANTED.

Signed: August 7, 2009

Graham C. Mullen
United States District Judge